MURDOCK, Judge,
dissenting.
As a threshold matter, I note my disagreement with the inclusion in the main opinion of an order requiring custody of the child immediately to revert to the birth mother. Though I fully agree with the substantive legal presumption upon which that order is premised, I question whether it is the correct course procedurally for this appellate court to enter such an order at this juncture. (Indeed, the question of the child’s custody in the event the adoption does not go forward has not been briefed to this court.) Procedurally, I believe it to be appropriate that this court merely reverse the trial court’s judgment approving the adoption.
As to the more fundamental question of the adoption, itself, I cannot agree with the main opinion when it quotes from Ex parte F.P., 857 So.2d 125, 138 (Ala.2003), to state that the biological father in this case had a “ ‘justifiable excuse for failing to establish a relationship with the child — the adoptive parents did not wish to allow him to do so.’ ” 933 So.2d at 1078. The trial court conducted an ore tenus hearing and, based on conflicting evidence, found that the biological father did not have a justifiable excuse for failing to establish a relationship with the child. The record contains *1080 substantial evidence to support the trial court’s finding.
“ ‘The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring.’ ” R.K. v. R.J., 843 So.2d 774, 781 (Ala.Civ.App.2002) (quoting Lehr v. Robertson, 463 U.S. 248, 262, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)). It should take more than the “wish” of prospective adoptive parents to prevent a fit and loving father from seeing his daughter and establishing a relationship with her. Indeed, the trial court could have found from the evidence presented that the biological father did not make a meaningful effort, either informally or by seeking the aid of the courts, to visit, or engage in an actual relationship with, his daughter after her birth and/or during the pendency of this litigation.
It is not necessary for a parent to intend, or set out, to abandon a child in order to do so. All that is required is that the child, in fact, be abandoned. It is true that an “abandonment” may be intentional — that is, a parent may intend to physically, emotionally, and/or financially abandon a child. Such purposeful conduct is only one type of abandonment recognized by statute. Alabama’s Child Protection Act, Ala.Code 1975, § 26-18-1 et seq. (“the CPA”), defines abandonment as
“[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
Ala.Code 1975, § 26-18-3(1) (emphasis added). The clauses following the disjunctive “or” describe abandonment that is not so much a matter of purpose as a matter of simply engaging or failing to engage in certain conduct. Such conduct can be the basis for the termination of parental rights under the CPA. See Ala.Code 1975, 26-18-7(1); D.M.P. v. State Dep’t of Human Res., 871 So.2d 77 (Ala.Civ.App.2003)(plu-rality opinion). See also Ex parte F.P., 857 So.2d at 143-46 (Stuart, J., dissenting).
Having said the foregoing, however, I concede that this case does not entail a direct claim for termination of parental rights under the CPA due to an abandonment. Compare Ex parte F.P., supra. Still, the same definition of abandonment found in the CPA is found in Alabama’s Adoption Code. See Ala.Code 1975, § 26-10A-2(1). Thus, as in the case of the CPA, abandonment for purposes of the Adoption Code is not necessarily a function of the biological parent’s intent. With respect to the Adoption Code, however, a finding of abandonment, or failure to maintain a parental relationship, arguably is only dispos-itive to the extent that it, in turn, is found to imply a consent to adoption on the part of a biological parent. See Ala.Code 1975, § 26-10A-9(a). Despite the formal legal position taken in this case by the biological father, the trial court found that the father’s subsequent acts and omissions spoke louder than his words, and implied the necessary consent under the Adoption Code. This is a difficult case. Given the conflicting evidence and the ore tenus presumption, however, I have not been persuaded that this court should overturn the trial court’s judgment in this case.[4]
*1081 We should not equate the filing of “court papers” and the taking of legal positions with the establishment of human relationships. A child can be abandoned just as surely when papers have been filed with a court as when they have not been. While those papers sit in a folder in a courthouse, children grow. They are read to and tucked in at night. They are nursed to health. They are taught. They are nurtured. They are loved. And they love back. And bonds are formed — but not with a biological father who has allowed himself to remain absent from the child’s life. See generally R.K. v. R.J., 843 So.2d 774; Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614.
BRYAN, J., concurs.

. I recognize that the main opinion in the Supreme Court's 2003 decision in Ex parte F.P. was joined by a majority of the Justices on that Court and therefore constitutes precedent that is binding on this court. I do not conclude, however, that Ex parte F.P. forecloses us from affirming the trial court’s judgment in the present case. In large part, the focus in Ex parte F.P. was on the effect of *1081 certain postbirth legal positions taken by the biological father upon his alleged prebirth implied consent to the adoption of the child and whether, if there was a prebirth implied consent, the postbirth legal positions of the biological father could operate to revoke that consent. Prebirth abandonment and consent are not at issue in the present case. As to the issue of postbirth abandonment and consent to adoption, I do not read Ex parte F.P. as holding that the taking of legal positions alone necessarily serves to insulate a biological parent from claims that he or she has abandoned and consented to the adoption of his or her child. Rather, the main opinion in Ex parte F.P. disposed of the claim that the biological father had abandoned his child after the child’s birth by stating that the biological father had a justifiable excuse for the absence of a postbirth relationship with his child. The facts of every case obviously are different in this respect, and, in this case, I would uphold the trial court’s finding based on conflicting ore tenus evidence that the lack of a physical and emotional relationship between the biological father and the child was not justified.